UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

MARGOT NIEDERLAND,

                    Plaintiff,              11 Civ. 6538

     -against-                              OPINION

AMBER TYLER CHASE,
AND L'ORAGE LTD.,

                    Defendants.

------------------------------------X

A P P E A R A N C E S:

          Attorneys for Plaintiff

          WILLKIE FARR & GALLAGHER LLP
          787 Seventh Avenue
          New York, NY  10019
          By:  Roger Netzer, Esq.
               Dan C. Kozusko, Esq.
               Mili G. Desai, Esq.


          Pro Se

          AMBER TYLER CHASE
          442 15th Street, 2R
          Brooklyn, NY  11215

**Sweet, D.J.**

The defendant Amber Tyler Chase ("Chase" or the "Defendant") pro se, submitted a letter on March 23, 2012 entitled "Request to Dismiss" which was treated as a motion. Plaintiff Margot Niederland ("Niederland" or the "Plaintiff") has moved to dismiss the counterclaims of Chase and L'Orage Ltd. ("L'Orage") (collectively, the "Defendants") pursuant to 12(b)(6) of the Federal Rules of Civil Procedure.  Based on the conclusions set forth below, the Defendant's motion is denied. Because the Defendant is pro se and because of her April 10, 2012 letter requesting time to obtain counsel, the Plaintiff's motion to dismiss the Defendant's counterclaims is adjourned for 45 days.  Due to the history of the relationship of the parties described, the action is directed to the Honorable James L. Cott for settlement.

**Factual Background and Prior Proceedings**

1

Niederland is a documentary filmmaker.  (Compl. ¶ 1).[1] In the fall of 1990, she produced, directed and edited a documentary film entitled "Broken Angel."  (Id. ¶ 12).  The film was a documentary featuring a Brooklyn building of the same name (the "Broken Angel Building") owned by artist Arthur Wood ("Wood").  (Id. ¶¶ 13-14).

In October 2006, Niederland learned that Wood was in danger of being evicted from the Broken Angel Building, which was to be leveled.  (Compl. ¶ 20).  Upon learning of the pending destruction of the Broken Angel Building, Niederland decided to make another film, which would be an expansion on her previous documentary film.  (Id. ¶ 24).

Chase is a filmmaker and graduate of New York University in film who specializes in "narrative and documentary films."  (Countercls. ¶ 7).  Defendant L'Orage is a New York corporation with its principal place of business in Brooklyn. (Id. ¶ 2).  L'Orage is a production company owned and operated by Chase.  (Id. ¶ 14).

---

[1] Citations to Plaintiff's complaint are cited as "Compl. ¶ __," while citations to Defendants' counterclaims are cited as "Countercls. ¶ __."

In approximately February 2007, Niederland emailed a number of potential cinematographers, including Chase, stating:

> I'm URGENTLY looking for a cinematographer with a HI-END PROFESSIONAL DIGITAL movie camera to collaborate with me NOW on my new film 'Broken Angel:  The Final Chapter' (working title).  Filming to begin VERY SOON. * * *  The film I'll be doing now will 'complete' the 1st – (short film) – 'Broken Angel' which I did year ago and which has already gotten critical recognition.

(Compl. ¶ 27).  Chase responded by email shortly thereafter:

> Sounds like fun.  Documentary or narrative? ....
> I have a dvx-100 with wide angle lens, french matte box, steady cam shoulder support, trolley that we've used as a dolly.  I like working with my camera and would like more kudos connected to my work....  P.S.  I take good direction because I know what it's like to work with camera people who are just stupid.

(Id. ¶ 30).  Niederland explained to Chase that she was a "filmmaker" and sought to create a sequel to her film "Broken Angel" about the upcoming demolition of the Broken Angel Building (the "Proposed Film").  (Countercls. ¶ 9).  Chase "agreed to work with Niederland on such a film."  (Id. ¶¶ 10).

3

During the next few months, Chase and Niederland
visited the building together approximately 13 times.
(Countercls. ¶ 12-13).  Chase shot film footage for the Proposed
Film, including footage of the demolition of part of the
building.  (Id. ¶ 13).  According to Chase, she made the
"decisions about what to film, when to film it and how to film
it."  (Id.).  Chase maintains that at no time "did Niederland
ever shoot any footage with the camera, look through the lens of
the camera, or instruct Chase regarding camera equipment,
technique, focus, lenses or how to capture the footage."  (Id.).
Niederland contends that Chase "operated the camera in
accordance with the express instructions given to her" by
Niederland, including what she wanted filmed, the angle of the
camera, the focus of the lens, and the source of light."  (Comp.
¶ 37).  Chase states that "Niederland's contribution to the
film, to the extent that it occurred, was limited to scouting
the location and providing Chase with her opinions, many of
which Chase did not adopt, regarding certain camera shots."
(Countercls. ¶ 15).

By late April 2007, Chase had shot approximately 15
tapes at the Broken Angel Building and produced the master DVDs,
which Chase contends is of "exceptionally high quality of which

4

was sufficient to render them usable in a film" to Niederland (Id. ¶ 17).  According to Chase, Niederland indicated "that she would return these master DVDs to Chase, but, despite Chase's repeated requests thereafter, Niederland has refused to do so." (Id.).

On April 27, 2007, Chase provided Niederland with a written agreement delineating the parties' rights and responsibilities and a "sample of a deferred compensation contract."  (Id. ¶ 18; Compl. ¶ 42).  A discussion about contractual terms continued, Niederland and Chase could not agree on the terms of that contract and ended their collaboration.  (Countercls. ¶ 19; Compl. ¶ 45).

Since April 2007, Chase has independently shot film at the Broken Angel Building, including scenes featuring Wood, his wife and their daughter, which she intends to use in separate and distinct film, which is unrelated to the Proposed Film. (Countercls. ¶ 21).

In May 2007, Chase applied for "a copyright registration on the film footage she shot, which she entitled 'A Castle In Brooklyn:  Broken Angel'."  (Id. ¶ 22.)  The United

States Copyright Office granted her Registration No. PA 1-387-652 for this footage" (the "Chase Copyright").  (Id.)  In January 2008, Niederland applied for a copyright registration as well, for a film "called 'Broken Angel:  The Final Chapter.'" (Id. ¶ 23)  The Copyright Office subsequently issued Niederland Registration No. PAu 3-338-782 (the "Niederland Copyright"). (Id.)

On March 13, 2008, Niederland filed an action against Chase and L'Orage in the United States District Court for the Eastern District of New York, Niederland v. Chase, No. 08-1054(NG) (the "E.D.N.Y. Action") (Id. ¶ 24; Kozusko Decl., Ex. C (E.D.N.Y. Compl.) at 1).  Niederland alleged copyright infringement, asserted against Chase the copyright registration which Chase obtained, and sought a court order which would enjoin Chase from using any film footage covered by Niederland's copyright registration and direct Chase to turn over all master tapes shot at the Broken Angel Building.  (Countercls. ¶ 24).

At the direction of the Court, the parties conducted a series of mediation sessions to try and resolve the dispute. (Id. ¶ 25.)  The last session, which Chase attended, occurred on June 2, 2008.  (Id.)  As a result of the mediation process, in

6

June 2009, Niederland and Chase reached a settlement-in-principle, subject to documentation, and informed the district court of the status of their dispute. (Id. ¶ 26; Compl. ¶ 55). Between June and October, they attempted to negotiate an acceptable settlement agreement in good faith. (Compl. ¶ 57.) On October 26, 2009, the district court, acting sua sponte, entered an order (the "Closing Order") that "closed" the E.D.N.Y. Action, notwithstanding the still-active settlement negotiations. (Id. ¶ 59; Kozusko Decl., Ex. D). According to Niederland, following entry of the Closing Order, Chase withdrew from settlement negotiations entirely. (Compl. ¶ 66). As a result, the parties never reached a settlement of the E.D.N.Y. Action.

The Closing Order states in its entirety:

> On June 4, 2009, the parties in this case reported to the Alternative Dispute Resolution Program of this district that they had reached settlement in mediation. This report was noted on the docket, and neither party has objected. The Clerk of Court is therefore directed to close this case. SO ORDERED.

Although the Court scheduled a status conference for January 6, 2010 to address the procedural status of the case, Judge Nina Gershon, by order dated December 17, 2009, cancelled that

7

conference (the "December Order"). (Kozusko Decl., Ex. E) and
noted that the case was "closed."  On December 24, 2009,
Niederland requested in a letter to the Court that the case be
reopened, a request that Judge Gershon denied by Order, dated
February 2, 2010 (the "February Order").  (Kozusko Decl., Ex.
F).

On April 2, 2010, Niederland moved for reconsideration
to the Second Circuit, which affirmed Judge Gershon.   See
Niederland v. Chase, 425 F. App'x 10 (2d Cir. 2011).

Niederland filed the instant action against the
Defendants on September 20, 2011, asserting claims for copyright
infringement, breach of contract, replevin, and unjust
enrichment seeking possession of the Footage and damages for its
unauthorized use by Chase, among other relief.  (Compl. ¶¶ 72-
107).

Chase filed her Amended Answer and Counterclaims on
January 31, 2012, asserting eight counterclaims against
Niederland:  (1) Declaration of Copyright Ownership; (2)
Copyright Infringement; (3) Fraud on the U.S. Copyright Office;
(4) Tortious Interference with Prospective Economic Advantage;

8

(5) Malicious Prosecution; (6) Abuse of Process; (7) Libel; and (8) False Pretenses. (Countercls. ¶¶ 36-69). The first three counterclaims are predicated on the allegation that Chase has a valid copyright registration as to the Footage, and that, as a result, Niederland had no right to use the Footage or to seek her own registration. (Id. ¶¶ 36-48). The counterclaim for tortious interference arises out of Niederland's alleged request that Wood decline to allow Chase to use her image and conversations that Niederland purportedly had with the press. (Id. ¶¶ 49-52). Both the malicious prosecution and abuse of process counterclaims are based on the allegation that Niederland commenced the instant action without justification. (Id. ¶¶ 53-58). The counterclaim of libel is based upon a comment on a blog, which Chase alleges was made by Niederland, and which Chase claims injured her professional reputation. (Id. ¶¶ 59-63). Finally, Chase alleges that Niederland's failure to return the cloned DVDs and tapes, despite her purported promise to do so, constitutes "false pretenses." (Id. ¶¶ 64-69).

        The instant motions were marked fully submitted on April 11, 2012.

9

**The Defendants' Motion To Dismiss Is Denied**

In her letter of March 23, 2012, Chase does not specify the procedural basis on which she seeks dismissal of the complaint, though she asks this Court to dismiss the complaint because the "causes of action" are legally "deficient" and as barred by res judicata.

Under Rule 12(b)(6), Chase cannot move to dismiss for failure to state a claim upon which relief can be granted, because such a motion "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). As this Court has held, "[a] motion to dismiss under Rule 12(b)(6) is untimely" where the movant "previously filed an answer in this action." Prince v. Cablevision Sys. Corp., No. 04-8151, 2005 WL 1060373, at *3 (S.D.N.Y. May 6, 2005). Here, Chase has filed an Amended Answer and Counterclaims in this action. Accordingly, her motion to dismiss under Rule 12(b)(6) is untimely.

To the extent that Chase has offered matters outside the pleadings for purposes of having the Court treat the letter as a motion for summary judgment, see Fed. R. Civ. P. 12(d),

that request is also inappropriate.  Chase, <u>pro</u> <u>se</u>, has not
complied with the requirements for seeking summary judgment.
<u>See</u> Fed. R. Civ. P. 56(c); S.D.N.Y. Local Civil Rule 56.1.
Conversion to summary judgment at this stage of the case would
not allow Niederland "a reasonable opportunity to present all
the material that is pertinent to the motion" as Rule 12(d)
requires.  Fed. R. Civ. P. 12(d).

        Therefore, Chase's motion to dismiss will be treated
as a motion for judgment on the pleadings pursuant to Rule
12(c).  <u>See</u> Fed R. Civ. P. 12(c) (stating that "[a]fter the
pleadings are closed but within such time as not to delay the
trial, any party may move for judgment on the pleadings."); <u>see</u>
<u>also</u> <u>Prince</u>, 2005 WL 1060373, at *3.  The standard for granting
a Rule 12(c) motion for judgment on the pleadings is identical
to that of a Rule 12(b)(6) motion for failure to state a claim.
<u>Patel v. Contemporary Classics of Beverly Hills</u>, 259 F.3d 123,
126 (2d Cir. 2001).

        Either party may move for judgment on the pleadings
"[a]fter the pleadings are closed."  Fed. R. Civ. P. 12(c).
"Fed. R. Civ. P. 7(a) prescribes when the pleadings are closed.
In a case such as this when, in addition to an answer, a

11

counterclaim is pleaded, the pleadings are closed when the
plaintiff serves his reply." Flora v. Home Fed. Sav. & Loan
Ass'n, 685 F.2d 209, 211 n.4 (7th Cir. 1982); T.D. Bank. N.A. v.
JP Morgan Chase Bank, N.A., No. 10 Civ. 2843, 2010 WL 4038826,
at *4 n.4 (E.D.N.Y. Oct. 14, 2010) ("When cross- and
counterclaims are filed, pleadings are not closed until answers
to those claims have been filed.").

Niederland has not yet served a reply to the
Counterclaims.  Instead, those Counterclaims are presently the
subject of the Plaintiff's Motion to Dismiss.  Accordingly, the
pleadings here are not closed. See, e.g., State Farm Fire &
Cas. Co. v. Spradling Home Inspections, LLC, No. 10-1887, 2011
WL 4056042, at *2 (E.D. Mo. Sept. 13, 2011) ("[A]s long as a
Rule 12 motion is pending as to a counterclaim, pleadings are
not considered closed because a party, against whom a
counterclaim is asserted, must file an answer to the
counterclaim if the Rule 12 motion is denied . . .  This view is
in line with the position of federal courts across the country
that have addressed this issue.") (collecting cases).

Because "the pleadings are not closed in this case,"
Chase's motion for judgment on the pleadings is denied as

12

premature.  Id. at *3 ("[T]he Court will not entertain the
motions for judgment on the pleadings and both motions will be
denied because the motions were filed prematurely."); IconFind,
Inc. v. Google, Inc., No. 11-319, 2011 WL 4505817, at *1 (E.D.
Cal. June 3, 2011) ("Plaintiff has not yet replied to
Defendant's Second Counterclaim for Declaratory Judgment of
Patent Invalidity.  Therefore, Defendant's Motion for Judgment
on the Pleadings is DENIED as premature.").

     In adjudicating a Rule 12(c) motion, the Court must
"accept the allegations in the amended complaint as true and
draw all reasonable inferences in favor of the nonmoving party's
favor[,]" here the Plaintiff's.  Patel, 259 F.3d at 126.  The
court should "not dismiss the case unless it is satisfies that
the complaint cannot state any set of facts that would entitle
him to relief."  Id. (citing Sheppard v. Beerman, 18 F.3d 147,
150 (2d Cir. 1994)).

     In the letter, Chase asserts that Niederland's claims
for breach of contract (presumably including the claim for
breach of an implied contract) and copyright infringement should
be dismissed because "[c]opyright ownership must be transferred
in writing and yet [Chase] never signed a written transfer of

13

her Copyright," and because she "was granted the Registered
copyright on August 9, 2007 as Director of Photography/
Producer."

The complaint alleges that Niederland and Chase
entered into an oral contract, pursuant to which Chase "would
film elements of the Broken Angel building at Plaintiff's
direction, for Plaintiff's subsequent use of the footage
captured in the expansion film, and Plaintiff would pay Chase
deferred compensation for her services." (Compl. ¶ 84.)  The
complaint then alleges that Chase breached that oral contract
when she refused to provide Niederland with the original
footage, and that this breach damaged her.  (Id. ¶¶ 85-87.)
Given that Niederland has pled facts in support of each of the
necessary elements of a breach of contract claims under New York
law (Id. ¶¶ 82-87), the complaint states a claim upon which
relief can be granted, and the breach-of-contract claim cannot
be dismissed on the basis of Chase's present submission.

Both Niederland and Chase filed copyright
registrations, and both have alleged to have been granted their
request by the United States Copyright Office. (Id. ¶ 73;
Countercls. ¶ 22, Ex. A.)  A motion for judgment on the

pleadings cannot be granted where, as here, there are disputed "material issues of fact [that] remain to be resolved" by the trier of fact. <u>Rivas v. Barnhart</u>, No. 01-3672, 2005 WL 183139, at *17 (S.D.N.Y. Jan. 27, 2005); <u>see also</u> <u>MacDonald v. Du Maurier</u>, 144 F.2d 696, 700-01 (2d Cir. 1944) ("Upon motion for judgment on the pleadings . . . this allegation must be accepted despite its denial in the appellee's answer.").

Judgment on the pleadings is also inappropriate for the additional reason that certain of the facts cited in the March 23, 2012 letter appear nowhere in the pleadings.  Judgment on the pleadings is only appropriate "where a judgment on the merits is possible merely by considering the contents of the pleadings." <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639, 642 (2d Cir. 1988).

Both in her Counterclaims, where she explicitly refers to the E.D.N.Y. Action as having been "dismissed with prejudice" (Countercls. ¶ 26), and in her March 23, 2012 letter, where she describes the E.D.N.Y. action as "an already dismissed case," Chase appears to seek dismissal of this action on res judicata grounds, that it is barred by the purported dismissal of the E.D.N.Y. Action.

15

The E.D.N.Y. Action, however, was not adjudicated on the merits, as the case was "closed" or dismissed.  In Penn West Associates v. Cohen, 371 F.3d 118, 126 (3d Cir. 2004), the Third Circuit held that a case marked "closed" because it had settled in principle was not dismissed, and thus the closure did not bar a subsequent action.  Id.  The Third Circuit reasoned that, because "nothing in the [closing] order mention[ed] dismissal," the closing order constituted "an administrative closing," rather than a dismissal.  Id. at 129.  The Court also noted that there is "no provision in the Federal Rules of Civil Procedure by which the mere passage of time can mature an administrative closing into a dismissal[.]"  Id. at 128.

Thus, the Closing Order was not an adjudication on the merits, and absent such an adjudication, res judicata does not apply.  See Grant v. New York, No. 88-8703, 1989 U.S. Dist. LEXIS 5716, at *7 (S.D.N.Y. May 24, 1989) ("Since there was no adjudication on the merits, the doctrine of res judicata does not apply.").

Accordingly, for the reasons stated above, Chase's motion to dismiss is denied.

16

**The Motion To Dismiss The Counterclaims Is Adjourned And The
Action Is Referred To The Magistrate For Settlement**

      "Determinations on motions for adjournment are 'made
in the discretion of the trial judge, the exercise of which will
ordinarily not be reviewd.'" Rosario v. Burge, 542 F. Supp. 2d
328, 339 (S.D.N.Y. 2008) (quoting Avery v. Alabama, 308 U.S.
444, 446, 60 S. Ct. 321, 84 L. Ed. 377 (1940)); see also Drake
v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003) ("Scheduling is a
matter that is of necessity committed to the sound discretion of
the trial court."). "[O]nly an unreasoning and arbitrary
'insistence upon expeditiousness in the face of a justifiable
request for delay' violates [the Constitution]." Bones v.
Superintendent, Groveland Correctional Facility, 2011 WL
1792779, at *5 (W.D.N.Y. May 6, 2011) (quoting Morris v. Slappy,
461 U.S. 1, 12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983).

      In her April 10, 2012 letter, Chase relayed to the
Court that she had "parted ways with [her] former counsel" and
has "been hesitant in requesting an extension of time to secure
effective representation in order to resubmit accurate
Counterclaims." Because the Defendant is pro se and because her
request for time to obtain counsel is reasonable, Niederland's

17

motion to dismiss the Counterclaims will be adjourned for 45 days.

The cooperation between the parties to develop a documentary film in early 2007 dissolved in dispute, and resulted in litigation in the Eastern District of New York in 2008, which was announced as settled in June 2008. Again, the cooperation between the parties dissolved and the agreement was never reached. Although the case was closed, it remains unresolved and presumably subject to being reopened.

This duplicitous action will be referred to Magistrate Judge James L. Cott to supervise the settlement in an effort to once again reach a resolution absent a wasteful and expensive litigation.

It is so ordered.

New York, NY
June 20 , 2012

ROBERT W. SWEET
U.S.D.J.

18